1
2
3
4
5
6
7
8                          UNITED STATES DISTRICT COURT
9                     FOR THE EASTERN DISTRICT OF CALIFORNIA
10
11   EMMA KLEIN,                                No.  2:15-cv-2584-CKD
12                  Plaintiff,
13          v.                                  ORDER
14   CAROLYN W. COLVIN, Acting
     Commissioner of Social Security,
15
                 Defendant.
16
17
18          Plaintiff seeks judicial review of a final decision of the Commissioner of Social Security

19   ("Commissioner") finding plaintiff was not disabled for purposes of receiving Disability

20   Insurance Benefits ("DIB") under Title II of the Social Security Act ("Act").  For the reasons

21   discussed below, the court will deny plaintiff's motion for summary judgment and grant the

22   Commissioner's cross-motion for summary judgment.

23   I.     BACKGROUND

24          Plaintiff, born May 7, 1967, applied on March 16, 2012 for DIB, alleging disability

25   beginning May 18, 2008.  Administrative Transcript ("AT") 83, 149-52.  Plaintiff alleged she was

26   unable to work due to kidney disease, type II diabetes, numbness in both legs, anxiety, and panic

27   attacks.  AT 165.  In a decision dated June 10, 2014, the ALJ determined that plaintiff was not

28   ////

disabled.[1]  AT 13-23.  The ALJ made the following findings (citations to 20 C.F.R. omitted):

> 1.   The claimant last met the insured status requirements of the Social Security Act on December 31, 2013.
>
> 2.   The claimant did not engage in substantial gainful activity during the period from her alleged onset date of May 18, 2008 though her date last insured of December 31, 2013.
>
> 3.   Through the date last insured, the claimant had the following severe impairments: diabetes with peripheral neuropathy, coronary artery disease on anti-coagulant therapy, spine degenerative disc disease, obesity, and depression.
>
> 4.   Through the date last insured, the claimant did not have an impairment or combination of impairments that met or medically equaled the severity of one of the listed impairments in 20 CFR Part

---

[1]    Disability Insurance Benefits are paid to disabled persons who have contributed to the Social Security program, 42 U.S.C. §§ 401, *et seq.*   Supplemental Security Income is paid to disabled persons with low income.  42 U.S.C. §§ 1382, *et seq.*  Both provisions define disability, in part, as an "inability to engage in any substantial gainful activity" due to "a medically determinable physical or mental impairment . . . ."  42 U.S.C. §§ 423(d)(1)(a) & 1382c(a)(3)(A).  A parallel five-step sequential evaluation governs eligibility for benefits under both programs.  See 20 C.F.R. §§ 404.1520, 404.1571-76, 416.920 & 416.971-76; Bowen v. Yuckert, 482 U.S. 137, 140-142 (1987).  The following summarizes the sequential evaluation:

> Step one:  Is the claimant engaging in substantial gainful activity?  If so, the claimant is found not disabled.  If not, proceed to step two.
>
> Step two:  Does the claimant have a "severe" impairment?  If so, proceed to step three.  If not, then a finding of not disabled is appropriate.
>
> Step three:  Does the claimant's impairment or combination of impairments meet or equal an impairment listed in 20 C.F.R., Pt. 404, Subpt. P, App.1?  If so, the claimant is automatically determined disabled.  If not, proceed to step four.
>
> Step four:  Is the claimant capable of performing his past work?  If so, the claimant is not disabled.  If not, proceed to step five.
>
> Step five:  Does the claimant have the residual functional capacity to perform any other work?  If so, the claimant is not disabled.  If not, the claimant is disabled.

Lester v. Chater, 81 F.3d 821, 828 n.5 (9th Cir. 1995).

The claimant bears the burden of proof in the first four steps of the sequential evaluation process.  Bowen, 482 U.S. at 146 n.5.  The Commissioner bears the burden if the sequential evaluation process proceeds to step five.  Id.

1    404, Subpart P, Appendix 1.

2    5.  After careful consideration of the entire record, the undersigned
     finds that, through the date last insured, the claimant had the
3    residual functional capacity to perform sedentary work as defined in
     20 CFR 404.1567(a) except she requires the option to stand up
4    every 30 minutes for 1 to 2 minutes at the workstation to stretch.
     She can occasionally climb ramps and stairs, stoop, balance,
5    crouch, crawl and kneel.  She cannot climb ladders, ropes or
     scaffolds.  She must avoid concentrated exposure to extreme heat,
6    cold, humidity, and avoid all exposure to hazards in the workplace
     such as moving machinery or unprotected heights.  She can perform
7    simple, repetitive tasks with occasional interaction with the public.

8    6.   Through the date last insured, the claimant was unable to
     perform any past relevant work.
9
     7.  The claimant was born on May 7, 1967 and was 46 years old,
10   which is defined as a younger individual age 18-44, on the date last
     insured.   The claimant subsequently changed age category to a
11   younger individual age 45-49.

12   8.  The claimant has at least a high school education and is able to
     communicate in English.
13
     9.  Transferability of job skills is not material to the determination
14   of disability because using the Medical-Vocational Rules as a
     framework supports a finding that the claimant is "not disabled,"
15   whether or not the claimant has transferrable job skills.

16   10.  Through the date last insured, considering the claimant's age,
     education, work experience, and residual functional capacity, there
17   were jobs that exist in significant numbers in the national economy
     that the claimant could have performed.
18
     11.   The claimant was not under a disability, as defined in the
19   Social Security Act, at any time from May 18, 2008, the alleged
     onset date, through December 31, 2013, the date last insured.
20

21   AT 15-23.

22   II.    ISSUES PRESENTED

23        Plaintiff argues that the ALJ committed the following errors in finding plaintiff not

24   disabled: (1) failed to fully and fairly develop the record with regard to plaintiff's cardiac

25   impairments; (2) improperly found plaintiff's testimony regarding the extent of her pain and

26   symptoms to be less than fully credible; (3) improperly discounted the lay witness testimony of

27   plaintiff's husband; (4) made a residual functional capacity ("RFC") determination that was not

28   based on substantial evidence; and (5) improperly relied on the vocational expert's ("VE")

1  testimony to find plaintiff not disabled at step five of the analysis.

2  III.   LEGAL STANDARDS

3         The court reviews the Commissioner's decision to determine whether (1) it is based on

4  proper legal standards pursuant to 42 U.S.C. § 405(g), and (2) substantial evidence in the record

5  as a whole supports it.  Tackett v. Apfel, 180 F.3d 1094, 1097 (9th Cir. 1999).  Substantial

6  evidence is more than a mere scintilla, but less than a preponderance.  Connett v. Barnhart, 340

7  F.3d 871, 873 (9th Cir. 2003) (citation omitted).  It means "such relevant evidence as a reasonable

8  mind might accept as adequate to support a conclusion."  Orn v. Astrue, 495 F.3d 625, 630 (9th

9  Cir. 2007) (quoting Burch v. Barnhart, 400 F.3d 676, 679 (9th Cir. 2005)).  "The ALJ is

10 responsible for determining credibility, resolving conflicts in medical testimony, and resolving

11 ambiguities."  Edlund v. Massanari, 253 F.3d 1152, 1156 (9th Cir. 2001) (citations omitted).

12 "The court will uphold the ALJ's conclusion when the evidence is susceptible to more than one

13 rational interpretation."  Tommasetti v. Astrue, 533 F.3d 1035, 1038 (9th Cir. 2008).

14        The record as a whole must be considered, Howard v. Heckler, 782 F.2d 1484, 1487 (9th

15 Cir. 1986), and both the evidence that supports and the evidence that detracts from the ALJ's

16 conclusion weighed.  See Jones v. Heckler, 760 F.2d 993, 995 (9th Cir. 1985).  The court may not

17 affirm the ALJ's decision simply by isolating a specific quantum of supporting evidence.  Id.; see

18 also Hammock v. Bowen, 879 F.2d 498, 501 (9th Cir. 1989).  If substantial evidence supports the

19 administrative findings, or if there is conflicting evidence supporting a finding of either disability

20 or nondisability, the finding of the ALJ is conclusive, see Sprague v. Bowen, 812 F.2d 1226,

21 1229-30 (9th Cir. 1987), and may be set aside only if an improper legal standard was applied in

22 weighing the evidence.  See Burkhart v. Bowen, 856 F.2d 1335, 1338 (9th Cir. 1988).

23 IV.   ANALYSIS

24        A. *The ALJ Fully and Fairly Developed the Record with Regard to Plaintiff's Cardiac*

25           *Impairments*

26        First, plaintiff argues that the ALJ failed to fully and fairly develop the record regarding

27 her cardiac impairments because he disregarded certain medical records and because the medical

28 record did not contain "an evaluation of plaintiff's cardiac impairments and associated functional

                                        4

1   limitations by either her treating physician or an examining Social Security consultant before or

2   after her cardiac infarction and coronary artery bypass grafting surgery."  ECF No. 12-1 at 21.

3         "The ALJ always has a 'special duty to fully and fairly develop the record and to assure

4   that the claimant's interests are considered . . . even when the claimant is represented by

5   counsel.'"  Celaya v. Halter, 332 F.3d 1177, 1183 (9th Cir. 2003) (citing Brown v. Heckler, 713

6   F.2d 441, 443 (9th Cir. 1983)).  "When the claimant is unrepresented, . . . the ALJ must be

7   especially diligent in exploring for all the relevant facts."  Tonapetyan v. Halter, 242 F.3d 1144,

8   1150 (9th Cir. 2001).

9         It is well established that a claimant bears the burden of providing medical and other

10  evidence that support the existence of a medically determinable impairment.  Bowen v. Yuckert,

11  482 U.S. 137, 146 (1987); Tidwell v. Apfel, 161 F.3d 599, 601 (9th Cir. 1998) ("At all times, the

12  burden is on the claimant to establish her entitlement to disability insurance benefits.").  Indeed, it

13  is "not unreasonable to require the claimant, who is in a better position to provide information

14  about his own medical condition, to do so."  Yuckert, 482 U.S. at 146 n.5.

15        Nevertheless, as the Ninth Circuit Court of Appeals has also explained:

16                The ALJ in a social security case has an independent duty to fully
              and fairly develop the record and to assure that the claimant's
17            interests are considered.  This duty extends to the represented as
              well as to the unrepresented claimant.  When the claimant is
18            unrepresented, however, the ALJ must be especially diligent in
              exploring for all the relevant facts ... The ALJ's duty to develop the
19            record fully is also heightened where the claimant may be mentally
              ill and thus unable to protect her own interests.  Ambiguous
20            evidence, or the ALJ's own finding that the record is inadequate to
              allow for proper evaluation of the evidence, triggers the ALJ's duty
21            to conduct an appropriate inquiry.

22  Tonapetyan v. Halter, 242 F.3d 1144, 1150 (9th Cir. 2001) (citations and quotation marks

23  omitted).  In short, "[a]n ALJ's duty to develop the record further is triggered only when there is

24  ambiguous evidence or when the record is inadequate to allow for proper evaluation of the

25  evidence." Mayes v. Massanari, 276 F.3d 453, 459-60 (9th Cir. 2001) (citing Tonapetyan, 242

26  F.3d at 1150.).

27  /////

28  /////

5

1    "The ALJ may discharge this duty in several ways, including: subpoenaing the claimant's

2    physicians, submitting questions to the claimant's physicians, continuing the hearing, or keeping

3    the record open after the hearing to allow supplementation of the record."  Id.  However, as some

4    courts have persuasively observed, the ALJ "does not have to exhaust every possible line of

5    inquiry in an attempt to pursue every potential line of questioning.  The standard is one of

6    reasonable good judgment."  Hawkins v. Chater, 113 F.3d 1162, 1168 (10th Cir. 1997) (citation

7    omitted).

8        Here, the ALJ rendered his RFC determination "[a]fter careful consideration of the *entire*

9    record."  AT 18 (emphasis added.)  Nothing in the ALJ's decision suggests that the ALJ outright

10   ignored any of the evidence in the record.  AT 18; see generally AT 15-23.  As discussed in

11   further detail below with regard to plaintiff's other arguments, the ALJ properly considered the

12   evidence in the record and rendered his RFC determination based on substantial evidence.

13   Accordingly, plaintiff's argument that the ALJ failed to fully and fairly develop the record by

14   ignoring certain medical records is without merit.

15       Plaintiff's argument that the ALJ failed to fulfill his duty to develop the record by not

16   obtaining a physician's opinion from both before and after plaintiff underwent her cardiac bypass

17   surgery is similarly without merit.  The record shows that the ALJ took efforts to ensure that he

18   had all of plaintiff's relevant medical records available to him before rendering his decision.

19   Indeed, during the administrative hearing, the ALJ specifically noted that the record as of that

20   date did not contain plaintiff's medical records from after July of 2013, questioned plaintiff

21   regarding whether there existed treatment records from after that time that were not already in the

22   record, obtained information from plaintiff with regard to each physician she saw between that

23   date and the date of the hearing, and then obtained those records before issuing his decision.  AT

24   26-29, 33-38.  Therefore, the record contained medical evidence regarding plaintiff's cardiac

25   impairment and other impairments from a time period spanning from roughly a year prior to her

26   cardiac surgery to a year after that procedure and opinions from multiple proper medical sources

27   that were based on that evidence.  See AT 24-29.  Nothing required the ALJ to specifically obtain

28   another opinion from a physician opining on plaintiff's condition from both before and after her

1   surgery in light of the fully developed medical record that the ALJ had before him when he issued

2   his decision.  As it was, the record was sufficiently developed so as "to allow for proper

3   evaluation of the evidence" by the ALJ.  Mayes, 276 F.3d at 459-60.  Accordingly, the ALJ fully

4   discharged his duty to fully and fairly develop the record before rendering his decision in

5   plaintiff's case.

6        B.  *The ALJ Properly Determined that Plaintiff's Pain and Symptom Testimony was Less*

7            *than Fully Credible*

8        Second, plaintiff argues that the ALJ improperly found plaintiff's testimony regarding the

9   extent of the pain and symptoms arising from her impairments to be less than fully credible.

10       The ALJ determines whether a disability applicant is credible, and the court defers to the

11  ALJ's discretion if the ALJ used the proper process and provided proper reasons.  See, e.g.,

12  Saelee v. Chater, 94 F.3d 520, 522 (9th Cir. 1995).  If credibility is critical, the ALJ must make an

13  explicit credibility finding.  Albalos v. Sullivan, 907 F.2d 871, 873-74 (9th Cir. 1990); Rashad v.

14  Sullivan, 903 F.2d 1229, 1231 (9th Cir. 1990) (requiring explicit credibility finding to be

15  supported by "a specific, cogent reason for the disbelief").

16       In evaluating whether subjective complaints are credible, the ALJ should first consider

17  objective medical evidence and then consider other factors.  Bunnell v. Sullivan, 947 F.2d 341,

18  344 (9th Cir. 1991) (en banc).  If there is objective medical evidence of an impairment, the ALJ

19  then may consider the nature of the symptoms alleged, including aggravating factors, medication,

20  treatment and functional restrictions.  See id. at 345-47.  The ALJ also may consider: (1) the

21  applicant's reputation for truthfulness, prior inconsistent statements or other inconsistent

22  testimony, (2) unexplained or inadequately explained failure to seek treatment or to follow a

23  prescribed course of treatment, and (3) the applicant's daily activities.  Smolen v. Chater, 80 F.3d

24  1273, 1284 (9th Cir. 1996); see generally SSR 96-7p; SSR 95-5p; SSR 88-13.  Work records,

25  physician and third party testimony about nature, severity and effect of symptoms, and

26  inconsistencies between testimony and conduct also may be relevant.  Light v. Social Security

27  Administration, 119 F.3d 789, 792 (9th Cir. 1997).  A failure to seek treatment for an allegedly

28  debilitating medical problem may be a valid consideration by the ALJ in determining whether the

1   alleged associated pain is not a significant non-exertional impairment.  See Flaten v. Secretary of

2   HHS, 44 F.3d 1453, 1464 (9th Cir. 1995).  The ALJ may rely, in part, on his or her own

3   observations, see Quang Van Han v. Bowen, 882 F.2d 1453, 1458 (9th Cir. 1989), which cannot

4   substitute for medical diagnosis.  Marcia v. Sullivan, 900 F.2d 172, 177 n.6 (9th Cir. 1990).

5   "Without affirmative evidence showing that the claimant is malingering, the Commissioner's

6   reasons for rejecting the claimant's testimony must be clear and convincing."  Morgan v.

7   Commissioner of Social Sec. Admin., 169 F.3d 595, 599 (9th Cir. 1999).

8          Here, the ALJ discounted plaintiff's testimony regarding the extent of the symptoms

9   arising from her physical and mental impairments for the following reasons: (1) plaintiff's

10  impairments were generally well controlled with the treatment she received; (2) plaintiff's

11  reported daily activities conflicted with the level of symptom severity plaintiff alleged; (3)

12  plaintiff provided contradictory statements regarding why she stopped working; (4) plaintiff's

13  complaints were undermined by significant gaps in treatment; and (5) plaintiff's claims of

14  debilitating symptoms were not supported by the objective medical evidence in the record.  AT

15  19-21.  As discussed below, these were clear and convincing reasons supported by substantial

16  evidence in the record.

17         First, the ALJ discounted plaintiff's testimony regarding the extent of her pain and

18  symptoms because it conflicted with the fact that the treatment plaintiff received was effective in

19  controlling her impairments.   This was a proper consideration in support of the ALJ's adverse

20  credibility determination.  See Parra v. Astrue, 481 F.3d 742, 751 (9th Cir. 2007) ("We have

21  previously indicated that evidence of conservative treatment is sufficient to discount a claimant's

22  testimony regarding severity of an impairment"); Warre v. Comm'r of Soc. Sec. Admin., 439

23  F.3d 1001, 1006 (9th Cir. 2006) (noting that a condition that can be controlled or corrected by

24  medication is not disabling for purposes of determining eligibility for benefits under the Act);

25  Fair v. Bowen, 885 F.2d 597, 604 (9th Cir. 1989); Montijo v. Sec'y of Health & Human Servs.,

26  729 F.2d 599, 600 (9th Cir. 1984); Odle v. Heckler, 707 F.2d 439, 440 (9th Cir. 1983).

27         Furthermore, the ALJ's reasoning was supported by substantial evidence.  As the ALJ

28  noted, while plaintiff's cardiac impairment required her to undergo three vessel bypass surgery on

8

1   February 25, 2013, the medical records from after that procedure show that plaintiff's heart

2   condition was well controlled with medication and plaintiff did not complain of any pain,

3   shortness of breath, or other symptoms generally associated with that condition.  E.g., AT 443-45,

4   455, 458-59, 461 463.  Similarly, the records also show that plaintiff's other physical impairments

5   were well controlled with prescribed medications and physical therapy, and that plaintiff was

6   generally "doing well."  E.g., AT 273-74, 294, 296, 302, 332, 515.  Furthermore, with regard to

7   her mental impairments, the record shows that they were generally well controlled by medication

8   without frequent changes as to dosage or type of medicine.  AT 316-20, 529, 650, 738.  In short,

9   there was substantial evidence to support the ALJ's reasoning that plaintiff's impairments were

10  generally well controlled with the treatment she received and that such a fact undermined

11  plaintiff's claims of debilitating limitations stemming from those impairments.

12      Second, substantial evidence from the record supported the ALJ's finding that plaintiff's

13  daily activities were inconsistent with her allegations of disabling symptoms and limitations.  AT

14  20.  "While a claimant need not vegetate in a dark room in order to be eligible for benefits, the

15  ALJ may discredit a claimant's testimony when the claimant reports participation in everyday

16  activities indicating capacities that are transferable to a work setting . . . Even where those

17  activities suggest some difficulty functioning, they may be grounds for discrediting the claimant's

18  testimony to the extent that they contradict claims of a totally debilitating impairment."  Molina v.

19  Astrue, 674 F.3d 1104, 1112-13 (9th Cir. 2012) (citations and quotation marks omitted); see also

20  Burch v. Barnhart, 400 F.3d 676, 680 (9th Cir. 2005) (ALJ properly considered claimant's ability

21  to care for her own needs, cook, clean, shop, interact with her nephew and boyfriend, and manage

22  her finances and those of her nephew in the credibility analysis); Morgan v. Comm'r of Soc. Sec.,

23  169 F.3d 595, 600 (9th Cir. 1999) (ALJ's determination regarding claimant's ability to "fix

24  meals, do laundry, work in the yard, and occasionally care for his friend's child" was a specific

25  finding sufficient to discredit the claimant's credibility).

26      Here, plaintiff reported that her daily activities consisted of some gardening and other

27  yard work, light cooking, washing dishes, doing laundry, light cleaning, playing video games and

28  using Facebook on her computer, reading, and watching television.  AT 51-55, 172-76.

9

1    The ALJ noted in support of his credibility determination that "while the medical records

2    document that [plaintiff] has occasional episodes of increased shortness of breath or pain, the

3    records show that these symptoms do not occur on a frequent basis and the claimant has not

4    complained of an inability to perform daily activities to her treating source."  AT 20.  Indeed, a

5    review of plaintiff's treating records indicates that plaintiff told her treating physicians that she

6    was able to able to carry out her daily activities without limitation even after she had undergone

7    heart surgery.  See, e.g., AT 455 ("She is able to perform her daily activities without any specific

8    limiting symptoms."), 459, 668, 672.  Plaintiff's reported activities and the indication in

9    plaintiff's medical records that she could still carry out those activities without specific

10   limitations provided substantial support for the ALJ's determination that plaintiff's impairments

11   rendered her less impaired than what she alleged.

12        Plaintiff argues that substantial evidence did not support the ALJ's reasoning regarding

13   plaintiff's daily activities because plaintiff's testimony further clarified how her impairments

14   negatively impacted her ability to carry out those activities to a degree that corroborates

15   plaintiff's pain and symptom claims.  To be sure, the record also contains some contrary

16   evidence, such as plaintiff's testimony that she used a cane at home and received help from her

17   husband with cooking and cleaning, suggesting that plaintiff's activities are more limited than

18   what they might indicate on their face.  AT 49, 182.  However, it is the function of the ALJ to

19   resolve any ambiguities, and the court finds the ALJ's assessment to be reasonable and supported

20   by substantial evidence.  See Rollins v. Massanari, 261 F.3d 853, 857 (9th Cir. 2001) (affirming

21   ALJ's credibility determination even where the claimant's testimony was somewhat equivocal

22   about how regularly she was able to keep up with all of the activities and noting that the ALJ's

23   interpretation "may not be the only reasonable one").  The ALJ here reasonably assessed the

24   evidence in the record regarding plaintiff's daily activities and plaintiff's testimony regarding

25   how her impairments impacted her ability to carry out those activities and determined that while

26   those reported activities supported the ALJ's RFC determination that plaintiff could perform only

27   sedentary work with additional limitations, it did not show that plaintiff was completely disabled.

28   See AT 19-21.  Accordingly, the ALJ did not err in citing to plaintiff's daily activities in support

10

of his adverse credibility determination.

Third, the ALJ reasoned that plaintiff's statements regarding why she stopped working her data entry job undermined her claims that her impairments precluded her from work. As the ALJ noted, while plaintiff claimed she stopped working her job as a nurse's assistant because it was too strenuous given her impairments, she also reported that she stopped working her later data entry job because she was laid off for reasons unrelated to her impairments. AT 20, 41-44. This, too, was a proper reason for discounting plaintiff's pain and symptom testimony. See Drouin v. Sullivan, 966 F.2d 1255, 1258-59 (9th Cir. 1992) (finding that the ALJ's consideration of the fact that the claimant did not lose her prior two jobs due to her alleged pain supported the ALJ's adverse credibility determination).

Fourth, the ALJ cited to the large gap between plaintiff's alleged onset date and the date on which her first treatment for her impairments occurred in support of his adverse credibility determination. Failure to seek consistent treatment is a proper consideration when evaluating credibility. See Burch v. Barnhart, 400 F.3d 676, 681 (9th Cir. 2005). "We have long held that, in assessing a claimant's credibility, the ALJ may properly rely on unexplained or inadequately explained failure to seek treatment or to follow a prescribed course of treatment . . . Moreover, a claimant's failure to assert a good reason for not seeking treatment, or a finding by the ALJ that the proffered reason is not believable, can cast doubt on the sincerity of the claimant's pain testimony." Molina, 674 F.3d at 1113-14 (citation and quotation marks omitted).

As the ALJ noted, although plaintiff alleges a disability onset date of May 18, 2008, the record indicates that she did not receive any treatment for her impairments until nearly four years later, on February 9, 2012, when she went to the Oroville Hospital Medical Group to establish care. AT 20, 310-12. Indeed, plaintiff's records show that plaintiff had admitted to her treating physicians on February 16, 2012, just after she established treatment, that she "had not had any treatment for about 7 years." AT 305. Such a large gap in treatment clearly suggests that plaintiff's impairments were not as debilitating as she alleged.

Plaintiff argues that, while the gap in treatment existed, the ALJ was not permitted to rely on it to support his adverse credibility determination without first seeking an explanation from

1    plaintiff for why that treatment gap existed, something the ALJ did not do.  In support of this

2    argument, plaintiff cites to the Ninth Circuit Court of Appeals' ruling in Orn v. Astrue, 495 F.3d

3    638 (9th Cir. 2007).  However, that opinion did not create an affirmative duty requiring the ALJ

4    to specifically request that the claimant provide an explanation for any gaps in treatment before

5    relying on those gaps in support of an adverse credibility determination.  That decision only

6    requires the ALJ to consider any explanation the claimant may provide or other information in the

7    record indicating that the gap in treatment was due to some reason other than a lack of debilitating

8    symptoms before the ALJ may infer that such a gap undermined the claimant's credibility.  Orn,

9    495 at 638.  Indeed, the Ninth Circuit Court of Appeals stated in that same case "that an

10   '*unexplained* . . . failure to seek treatment' may be the basis for an adverse credibility finding."

11   Id. (quoting Gamble v. Chater, 68 F.3d 319, 321 (9th Cir. 1995)) (emphasis added).  Here, the

12   record indicates that plaintiff gave no explanation for her initial 4 year treatment gap, and nothing

13   in the record suggests that the gap was attributable to plaintiff's inability to pay for treatment or

14   any other reason that would justify her in not seeking treatment during that time.  Accordingly,

15   the ALJ was permitted to rely on plaintiff's treatment gap in support of his adverse credibility

16   determination.

17          Finally, the ALJ properly took into account the fact that the objective medical evidence in

18   the record conflicted with plaintiff's claims of debilitating pain and symptoms.  Indeed, with

19   regard to plaintiff's coronary impairment, the record shows that while plaintiff underwent three

20   vessel bypass surgery on February 25, 2013, it also shows that her condition after that procedure

21   was stable, that she did not exhibit symptoms such as chest pain, shortness of breath, or

22   diaphoresis, and that her physicians believed that she could perform her daily activities without

23   experiencing limiting symptoms.  E.g., AT 443-45, 455, 458-59, 461 463, 664, 752.

24   Furthermore, even though plaintiff experienced "early or mild" neuropathy in her lower

25   extremities as a result of her diabetes, that condition did not cause any clubbing, cyanosis, edema,

26   or tenderness.  E.g., AT 423, 457, 533, 559, 723.  Similarly, although plaintiff complained of

27   back pain, radiographs of plaintiff's spine showed only minimal to mild degenerative changes,

28   and physical examination demonstrated a normal gait, normal muscle strength, and a negative

straight leg raise test.  AT 653, 709-11.  In short, there existed substantial objective medical

evidence in the record from which the ALJ could, and did, draw to support his adverse credibility

determination.  Although lack of medical evidence cannot form the sole basis for discounting

plaintiff's subjective symptom testimony, it is nevertheless a relevant factor for the ALJ to

consider.  Burch, 400 F.3d at 681.  Accordingly, the ALJ did not err in considering such evidence

in support of his adverse credibility determination, especially in light of the other clear and

convincing reasons he provided in support of that conclusion.

   In sum, because the ALJ provided multiple clear and convincing reasons that were

supported by substantial evidence from the record to back his determination that plaintiff's pain

and symptom testimony was less than fully credible, he did not err in making such a finding.

   C.  *The ALJ Properly Discounted the Lay Witness Testimony of Plaintiff's Husband*

   Third, plaintiff argues that the ALJ improperly discounted the lay witness testimony of her

husband without providing germane reasons for doing so that were specific to that witness.

"[L]ay witness testimony as to a claimant's symptoms or how an impairment affects ability to

work is competent evidence, and therefore cannot be disregarded without comment."  Nguyen v.

Chater, 100 F.3d 1462, 1467 (9th Cir. 1996); see also Dodrill v. Shalala, 12 F.3d 915, 918-19 (9th

Cir. 1993) (friends and family members in a position to observe a plaintiff's symptoms and daily

activities are competent to testify to condition).  "If the ALJ wishes to discount the testimony of

the lay witnesses, he must give reasons that are germane to each witness."  Dodrill, 12 F.3d at

919.  Nevertheless, the ALJ is not required "to discuss every witness's testimony on a[n]

individualized, witness-by-witness basis."  Molina, 674 F.3d at 1114.  Indeed, while the

applicable regulations require "the ALJ to consider testimony from family and friends submitted

on behalf of the claimant," they "do not require the ALJ to provide express reasons for rejecting

testimony from each lay witness."  Id. (citing 20 C.F.R. §§ 404.1529(c)(3), 404.1545(a)(3)).

"Rather, if the ALJ gives germane reasons for rejecting testimony by one witness, the ALJ need

only point to those reasons when rejecting similar testimony by a different witness."  Molina, 674

at 1114.

////

13

1    When the ALJ provides clear and convincing reasons for discounting a claimant's

2    testimony and the third-party lay witness's testimony is similar to the claimant's testimony, the

3    ALJ's reasons for discounting the claimant's testimony may also constitute germane reasons for

4    rejecting the third-party lay witness's testimony.  Valentine v. Comm'r Soc. Sec. Admin., 574

5    F.3d 685, 694 (9th Cir. 2009); see also Molina, 674 at 1114.  Furthermore, even when the ALJ

6    errs by failing to explain his or her reasons for disregarding a layperson's testimony, such error is

7    harmless if that layperson's testimony largely reflects the limitations described by the claimant

8    and the ALJ provides clear and convincing reasons for discounting the claimant's testimony,

9    because the layperson's testimony in such a circumstance is "inconsequential to the ultimate

10   nondisability determination in the context of the record as a whole."  Molina, 674 F.3d at 1122

11   (quotation marks omitted).

12   Here, the ALJ summarized the third-party statement plaintiff's husband in detail, clearly

13   indicating that he considered the information.  AT 19.  Moreover, plaintiff's husband's report

14   essentially echoed plaintiff's own testimony and, as discussed above, the ALJ already provided

15   specific, clear, and convincing reasons for discounting plaintiff's testimony, which are equally

16   germane to this third-party testimony.  As such, any error in not explicitly restating or

17   incorporating by reference the reasons given for discounting plaintiff's testimony with respect to

18   this third party statement was harmless and remand is not warranted.  See Molina, 674 F.3d at

19   1115-22.

20          D.   *The ALJ's RFC Determination was Supported by Substantial Evidence*

21   Fourth, plaintiff contends that the ALJ's RFC determination was erroneous because it did

22   not incorporate certain limitations that plaintiff testified she had, such as needing to frequently lie

23   down due to fatigue.  However, the ALJ was not required to include this or any other specific

24   limitation alleged by plaintiff because he properly discredited plaintiff's pain and symptom

25   testimony for the reasons discussed above.  Accordingly, plaintiff's argument is without merit.

26   ////

27   ////

28   ////

14

1    Plaintiff also asserts that the ALJ erroneously disregarded certain limitations opined by

2   Dr. Whitten,[2] an examining psychiatrist, because he did not properly incorporate those limitations

3   into his RFC determination despite also assigning "good weight" to Dr. Whitten's opinion.

4   Specifically, plaintiff argues that the ALJ disregarded Dr. Whitten's opinion that plaintiff has

5   "[m]oderate to severe enduring circumstances," and "may not be able to interact with coworkers

6   without being side-tracked or distracted," "perform work activities on a consistent basis," "be

7   able to complete a workweek without interruption from her psychiatric symptoms," and "deal

8   with usual stress encountered in a competitive work environment."  ECF No. 12-1 at 30 (quoting

9   AT 319).

10    The Ninth Circuit Court of Appeals has noted that an ALJ may synthesize and translate

11   assessed limitations into an RFC assessment without repeating each functional limitation

12   verbatim in the RFC assessment.  Stubbs-Danielson v. Astrue, 539 F.3d 1169, 1173-74 (9th Cir.

13   2008); see also 20 C.F.R. § 404.1545 (defining RFC as "the most you can still do despite your

14   limitations").  In this case, plaintiff's RFC appears to adequately capture the functional limitations

15   assessed by Dr. Whitten.

16    Based on his August 7, 2012 consultative examination of plaintiff, which consisted of a

17   complete psychiatric evaluation and a review of plaintiff's medical records, Dr. Whitten opined

18   that plaintiff is able to manage her own funds, perform simple and repetitive tasks, and accept

19   instructions from supervisors.  AT 316, 319.  He also found that while plaintiff "may be tolerant

20   of customer[s] . . . she may not be able to interact with coworkers without being side-tracked or

21   distracted" and "may not be able to perform work activities on a consistent basis."  AT 319.  Dr.

22   Whitten opined further that while plaintiff "is able to maintain regular attendance . . . she may not

23   be able to complete a workweek without interruption from her psychiatric symptoms and she may

24   not be able to deal with the usual stresses encountered in a competitive work environment."  Id.

25

26   [2] Plaintiff at times refers to a Dr. Whitcomb in her discussion of this issue in her motion for
summary judgment and reply brief.  ECF Nos. 12-1 at 30, 14 at 8.  A review of the record reveals
27   no medical records or opinions issued by a Dr. Whitcomb.  In light of the fact that plaintiff
references this name intermittently during her discussion of Dr. Whitten's opinion, the court
28   presumes that it is merely a misspelling of Dr. Whitten's name.

1   Overall, Dr. Whitten opined that plaintiff's mental impairments "would have a moderate impact

2   on [plaintiff's] ability to work reliably and consistently." AT 320. The ALJ assigned Dr.

3   Whitten's opinion "good weight" because it was generally consistent with the opinions of Dr.

4   Jacobs and Dr. Campbell—two State agency psychological consultants who reviewed plaintiff's

5   medical records and opined limitations similar to those opined by Dr. Whitten, AT 79-80, 96-

6   97—and plaintiff's minimal treatment record. AT 21. The ALJ also credited Dr. Whitten's

7   opinion because it "was based on direct examination, personal observation, and objective testing."

8   Id.

9        The ALJ's RFC determination regarding plaintiff's mental limitations tracked exactly Dr.

10  Whitten's opined limitations regarding plaintiff's ability perform simple and repetitive tasks and

11  engage in social interactions. AT 18, 319. While plaintiff argues that the ALJ's determination

12  did not adequately capture the other aspects of Dr. Whitten's opinion, a review of the ALJ's

13  decision shows that he summarized those aspects as indicating that Dr. Whitten opined that

14  plaintiff's mental condition would have a "moderate impact on her ability to work reliably and

15  consistently." AT 21. This summary was reasonable, especially in light of the fact that Dr.

16  Whitten himself summarized the limitations he opined in the same manner. AT 320. Moreover,

17  the limitations plaintiff contends the ALJ failed to either incorporate or reject amounted, at most,

18  to moderate mental limitations that did not require the ALJ to include non-exertional limitations

19  as part of his RFC determination beyond those that he already included. See Hoopai v. Astrue,

20  499 F.3d 1071, 1077 (9th Cir. 2007) (holding that moderate non-exertional limitations regarding a

21  claimant's ability to perform activities within a schedule, maintain regular attendance, be

22  punctual with customary tolerance, and complete a normal workday and workweek without

23  interruption from psychologically-based symptoms are not severe enough to warrant limitations

24  beyond any exertional limitations). Accordingly, the ALJ did not err in addressing Dr. Whitten's

25  opinion.

26       E.  *The ALJ's Step Five Determination was Free from Error*

27       Finally, plaintiff argues that the ALJ erred in rendering his step-five determination based

28  on the testimony provided by the VE because the ALJ's hypotheticals based on his RFC

1  determination failed to fully encompass all of plaintiff's limitations supported by the evidence in

2  the record, therefore meaning that the VE's testimony did not constitute substantial evidence.

3  Specifically, plaintiff contends that the ALJ's hypotheticals based on his RFC determination

4  failed to incorporate a limitation that plaintiff would be required to lie down and rest periodically

5  due to fatigue based on plaintiff's testimony.  Plaintiff also contends that the ALJ should have

6  included the limitations contained in Dr. Whitten's opinion plaintiff claims the ALJ disregarded

7  when determining plaintiff's RFC.  However, as discussed above, the ALJ properly discounted

8  plaintiff's pain and symptom testimony, including her statements that her impairments required

9  her to lie down and rest due to fatigue, and properly encompassed Dr. Whitten's opinion within

10 the limitations included in his RFC determination.  See Greger v. Barnhart, 464 F.3d 968, 973

11 (9th Cir. 2006) (quoting Osenbrock v. Apfel, 240 F.3d 1157, 1164-65 (9th Cir. 2001)) ("The ALJ

12 . . . 'is free to accept or reject restrictions in a hypothetical question that are not supported by

13 substantial evidence.'").  Accordingly, plaintiff's argument is without merit.

14       The ALJ posed hypotheticals to the VE that incorporated all of the limitations included in

15 the ALJ's RFC determination, to which the VE responded that there existed several jobs within

16 the national economy that plaintiff could perform.  AT 59-63.  The ALJ properly relied on this

17 testimony to support his step five determination that there existed jobs in significant numbers

18 within the national economy that plaintiff could perform given her RFC.  See Bray v. Comm'r of

19 Soc. Sec. Admin., 554 F.3d 1219, 1228 (9th Cir. 2009).  Therefore, the ALJ's step five

20 determination that plaintiff was not disabled within the meaning of the Act was proper and

21 supported by substantial evidence.

22 V.    CONCLUSION

23       For the reasons stated herein, IT IS HEREBY ORDERED that:

24       1.  Plaintiff's motion for summary judgment (ECF No. 12) is denied;

25       2.  The Commissioner's cross-motion for summary judgment (ECF No. 13) is granted;

26 and

27 ////

28 ////

17

3.  Judgment is entered for the Commissioner.

Dated:  July 25, 2016

_____
CAROLYN K. DELANEY
UNITED STATES MAGISTRATE JUDGE

11 klein2584.ss